**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-00513-REB

JAMES RIOS,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

      The matter before me is plaintiff's **Complaint** [#2][1] filed March 2, 2011, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff alleges that he is disabled as a result of cardiomyopathy, diabetes, hypertension, obesity, and depression. After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on May 27, 2009. At

---

[1] "[#2]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

the time of the hearing, plaintiff was 46 years old.  He has an eleventh grade education and past relevant work experience as a UPS driver and a van driver.  He has not engaged in substantial gainful activity since December 8, 2005, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to either disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe physical impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, nor were they exacerbated by obesity.  Plaintiff's depression was found to be non-severe.[2]  The ALJ found that plaintiff had the residual functional capacity to perform a limited range of sedentary work and imposed mental, postural, and environmental limitations to account for the effects of plaintiff's medically determinable impairments and side effects of his medications. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were other jobs existing in significant numbers in the national and local economies that he could perform given his residual functional capacity.  The ALJ, therefore, found plaintiff not disabled at step five of the sequential evaluation.

Plaintiff appealed this decision to the Appeals Council.  The Council affirmed. Plaintiff then filed this action in federal court.

---

[2]  A finding that plaintiff does not challenge in this appeal.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).   However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.      The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.      The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.      The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.      If the claimant's impairment does not meet or equal a listed

3

impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.     If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

4

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed

to apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh

the evidence or substitute its discretion for that of the Commissioner.  *Id.*

## III.  LEGAL ANALYSIS

Plaintiff claims the ALJ erred by failing to articulate good cause for refusing to

assign controlling weight to the opinion of his treating doctor, failing to consider the

effect of plaintiff's obesity and the combined effect of all his impairments on his residual

functional capacity, and failing to sustain the Commissioner's burden of proof at step

five of the sequential evaluation process.  I disagree on all counts and, therefore, affirm.

In April, 2008, plaintiff's treating doctor, Hai Phong Bui, completed a residual

functional capacity questionnaire opining that plaintiff could sit for no more than one

hour and stand and walk for no more than one hour in an eight-hour day, that he could

lift and carry no weight whatsoever, had multiple postural and environmental limitations,

and was incapable of tolerating even low work-related stress.  (Tr. 501-504.)  He

concluded that plaintiff was permanently disabled.  (Tr. 505.)  The ALJ gave little weight

to this opinion on the grounds that it appeared to be based largely on plaintiff's

subjective reports of his limitations, was inconsistent with the other medical evidence of

record, and also was incompatible with Dr. Bui's own treatment notes, particularly a

functional evaluation completed just two months earlier that stated plaintiff could lift up

to ten pounds, stand for two hours per day, and sit for six hours per day.  (Tr. 19-20,

535.)

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[3] In all events, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301; *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995); *Frey*, 816 F.2d at 513.

The ALJ's opinion in this case is a model of clarity, precision, and thoughtful and thorough analysis of the evidence in relation to the standards applicable to determining

---

[3] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. §§ 404.1527(d)(2) & 416.927(d).

6

disability.  The reasons cited by the ALJ for discounting Dr. Bui's April, 2008, opinion so steeply are all legitimate and well-supported by specific reference to the record evidence.  The ALJ did a commendable job of dissecting the copious medical record and analyzing the numerous medical opinions of plaintiff's treating and examining sources.[4]

The ALJ's conclusion that Dr. Bui's records were inconsistent with his April, 2008, opinion is more than adequately supported by the record.  Just two months prior to this drastic pronouncement, stating plaintiff could not sit, stand, or walk for even an hour a day and could lift no weight,[5] Dr. Bui had offered a far more sanguine picture of plaintiff's functional abilities to the Office of Economic Development.[6]  Noting that nothing in the medical evidence suggested that plaintiff had undergone a precipitous decline between February and April, 2008, the ALJ did not err in relying on this discrepancy to assign Dr. Bui's opinion little weight.  ***See Frey***, 816 F.2d at 513 (treating

---

[4]  To the extent plaintiff contends that the ALJ failed to examine each of the section 404.1527(d) factors individually, the regulations require only that the ALJ "apply" them, not that he recite them as a litany.  ***Mestas v. Astrue***, 2010 WL 3604295 at *3 (D. Colo. Sept. 7, 2010).  I find nothing in the ALJ's detailed and meticulous opinion that suggests these factors were not considered and applied here.

[5]  The ALJ also noted that these limitations appeared to be based largely on plaintiff's subjective report of his symptoms.  (Tr. 20.)  That conclusion finds support in the record.  (***See*** Tr. 504) (in response to request to explain basis for his conclusions, Dr. Bui stated "patient reported that he is [unintelligible] fatigue, weak, short of breath, unable to hold a job due to [unintelligible] – now become depressed").  Moreover, although standing alone, the fact that a medical professional basis his opinion on a claimant's subjective reports provides no independent ground for rejecting that opinion, ***see Orender v. Barnhart***, 2002 WL 1747501 at *6 (D. Kan. July 16, 2002) (citing ***Nieto v. Heckler***, 750 F.2d 59, 61-62 (10th Cir. 1984)), in conjunction with the other sufficient bases on which the ALJ here relied, such considerations are not improper and lend further support to the ALJ's decision to discredit Dr. Bui's opinion.

[6]  Plaintiff insists this opinion is not, in fact, inconsistent because Dr. Bui also stated in the prior opinion that plaintiff could not engage in classroom or work/training activities or perform an independent job search.  (Tr. 535.)  Plaintiff does not explain how these separate limitations qualify or explain Dr. Bui's earlier, express statements regarding plaintiff's abilities to lift, sit, and stand, and it is not otherwise apparent that they do.

source opinion that is unsupported by medical evidence properly rejected).

Likewise, I perceive no reversible error in the ALJ's conclusion that the other medical evidence of record, including Dr. Bui's own treatment records, did not support the extreme limitations suggested by his April, 2008, opinion.  The ALJ made specific reference to the opinion of the consultative examiner[7] as well as reports of reports from 2007 and 2008 of two other treating doctors and Dr. Bui himself, noting that plaintiff denied chest pain or shortness of breath, that his cardiac condition was stable, and that he was "doing well" in that regard.  (Tr. 20, 349, 349.)  In challenging this determination, plaintiff essentially asks this court to determine the effect of the medical evidence.  Yet neither I nor the ALJ is equipped to contradict a medical professional's assessment that various laboratory and examination findings support a conclusion that the patient is "doing well" with regard to an allegedly disabling impairment.  (*See* Tr. 359.)  Ultimately, conflicts in the evidence such as these are for the ALJ to resolve, and the ALJ did so appropriately here.  *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988); *Gleason v. Apfel*, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999) (same).

Plaintiff next argues that the ALJ failed to properly assess the impact of obesity on his other alleged impairments, or consider how the combination of all his impairments impacted his residual functional capacity.  Although no longer a separately listed impairment, obesity still must be considered insofar as it impacts other impairments of the musculoskeletal, respiratory, and cardiovascular systems.  *See*

---

[7] Plaintiff's attempt to undermine the significance of this report by suggesting that it was based on only a brief examination is unconvincing.  Although the consultative examiner used the phrase "Brief Mental Status Examination" as a header to one section of her report (Tr. 459), nothing in the report itself or otherwise suggests that the examination as a whole was cursory or incomplete.

**Social Security Ruling 02-1p**, 2000 WL 628049 at *1 (S.S.A. Sept. 12, 2002).  The ALJ "considered the additional and cumulative effects of obesity in accordance with SSR 02-1p, but conclude[d] that this condition does not increase the severity of the claimant's coexisting impairments . . . " (Tr. 17.)   Although such recitations may provide grounds for reversal where the record suggests reasons to doubt their validity, **see Cox v. Apfel**, 2000 WL 1472729 at * 8 (D. Kan. Feb. 24, 2000) (citing **Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1498-99 (10th Cir. 1992)), such is not the case here.  As for whether the ALJ considered the combination of plaintiff's impairments, the precise and well-supported limitations the ALJ imposed in assessing plaintiff's residual functional capacity plainly belie any notion that the ALJ failed to account for the totality of plaintiff's impairments.

Finally, plaintiff challenges the ALJ's determination at step five of the sequential evaluation that at least one of the alternative jobs the vocational expert identified and on which the ALJ relied is not compatible with the limitation of his residual functional capacity to jobs involving only simple instructions.  **See Hackett v. Barnhart**, 395 F.3d 1168, 1176 (10th Cir. 2005); **Scheibeler v. Astrue**, 2009 WL 3077310 at *3 (D. Colo. Sept. 21, 2009).[8]  Assuming *arguendo* that this definition differs substantially from the ALJ's conclusion that plaintiff is capable of routine work involving uncomplicated instructions, any such error is undoubtedly harmless.  **See Bernal v. Bowen**, 851 F.2d

---

[8]  More specifically, plaintiff notes that the job of document preparer has a reasoning level of 3, which suggests that the job requires the ability to "[d]eal with problems involving several concrete variables in or from standardized situations." **Dictionary of Occupational Titles**, Appendix C, § III, ¶ 03, **available at** http://www.occupationalinfo.org/appendxc_1.html#III (last accessed March 22, 2012).  The Tenth Circuit has noted is an apparent conflict between this reasoning level and a finding that a claimant's residual functional capacity is limited to simple instructions, which conflict requires further analysis and explanation by a vocational expert.  **See Hackett**, 395 F.3d at 1176.

297, 303 (10th Cir. 1988).  For even if this job is eliminated from consideration, plaintiff does not suggest that the remaining two jobs were beyond his mental residual functional capacity.[9]  These two jobs collectively account for 89,000 jobs nationally.  (Tr. 53-54).  **See Stokes v. Astrue**, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008) (aggregating total numbers of all jobs identified by vocational expert).[10]  Although the Tenth Circuit has eschewed a bright line rule for determining what may constitute a significant number of jobs, **Trimiar v. Sullivan**, 966 F.2d 1326, 1330 (10th Cir. 1992), I cannot conclude that this number of jobs is so dubious or borderline that remand is required for the more searching inquiry suggested by **Trimiar** in doubtful cases, **see id.** at 1331-32.  **See also Clay v. Barnhart**, 417 F.3d 922, 931 (8th Cir. 2005) (no reversible error where, despite potential inconsistency between claimant's residual functional capacity and reasoning level of jobs identified, other jobs existed in significant numbers).  I, therefore, find and conclude that the Commissioner sustained his burden at step five to prove that plaintiff was not disabled.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through

---

[9]  Plaintiff posits, but presents no actual evidence, that these two other jobs must have production requirements that could be incompatible with the ALJ's limitation of his residual functional capacity to jobs that do not require multitasking or a rapid pace.  I find no basis for error in this regard.  The vocational expert's testimony that these jobs were compatible with the functional limitations identified by the ALJ – including the limitation to work involving no rapid pace or multitasking – itself constitutes substantial evidence supporting the Commissioner's burden at step five.

[10]  Although the number of jobs in Colorado was much smaller – 760 between both jobs – this fact alone does not undermine the significant number of jobs available nationwide.  **See** 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.  It does not matter whether – (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work.").

the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 23, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge